FILED
2022 Jan-07  PM 11:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **AMERICA'S FRONTLINE DOCTORS, et al,** | ) | |
| | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Case No. 2:21-cv-702-CLM |
| | ) | |
| **The UNITED STATES OF AMERICA, et al,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' REPLY TO DEFENSE MOTION TO DISMISS**

Come now the Plaintiffs, through their undersigned counsel, and respectfully submit the following as a reply to the Defendants' motion to dismiss the amended complaint filed herein.

**SUMMARY**

This case is based upon recent events. In December, 2020, the HHS Secretary began the process for approving 3 COVID-19 vaccines, one produced by Pfizer, Inc., another by Johnson & Johnson/Janssen, and the last by Moderna. At first, public officials sought to persuade Americans to voluntarily "take the jab," but President Biden changed his mind on September 9, 2021, and issued two Executive Orders, Executive Order 14042 ("EO 14042", ECF 37-1) and Executive Order 14043 ("EO 14043", ECF 37-2) that provided the legal foundation for other "requirements" to

1

address and hopefully remedy the current COVID-19 pandemic. Based on these Executive Orders, the Safer Federal Workforce Task Force ("SFWTF") has promulgated several "Guidelines" applicable to federal civilian employees as well as employees of government contractors that dictate vaccines, mask wearing, and "social distancing." Further, deadlines have been set regarding when these employees must be vaccinated, must wear masks in certain situations, and must engaged in "social distancing." These requirements were in place when the Plaintiffs amended complaint (ECF 32-1) was filed herein.

Plaintiffs Joseph Makowski, Lyle Bloom, Ellen Millen, Jody Sobczak, Michael Nelson and Joseph Leahy work for either government agencies or government contractors, and these employers have set conditions for further employment: they must get vaccinated, or in lieu thereof, they must submit and obtain an "accommodation" in lieu of vaccination. Furthermore, especially if they get an accommodation, they must wear masks and engage in social distancing.

This reply addresses just the circumstances of three of the Plaintiffs, Joseph Makowski (who is employed by a government contractor), Michael Nelson and Joseph Leahy (who both are employed by a government agency, NASA). All three of these Plaintiffs have been required to comply with the dictates of the several Guidelines issued by the SFWTF. They have been required to submit paperwork to their employers in order to secure an accommodation. Makowski has been granted an

accommodation, but Nelson and Leahy have not. But the important fact relevant here is that these Plaintiffs (as well as the others) are currently experiencing the implementation of the above mentioned Executive Orders and the Guidelines based thereon. Because the Plaintiffs are so being subjected to these mandates, they have the constitutional standing to maintain this lawsuit.

The defense contends otherwise and challenges by means of their motion the Plaintiffs standing. The argument of the defense is perhaps imaginative, but it is still incorrect. By rephrasing the factual basis for the Plaintiffs standing and limiting it to just a complaint about being forced to take vaccines, the defense asserts that standing for the Plaintiffs is absent and consequently their amended complaint must be dismissed.

But this is a flawed argument best demonstrated and exposed by means of a hypothetical illustration. Suppose that a criminal defendant had been convicted of a heinous crime and sentenced to be "shot at dawn." In the early morning of the day of execution, some deputies go to the jail but drag out the wrong party, a man simply awaiting trial for shop-lifting, and it is this man who gets executed.

The defense's argument about standing leads to some illogical and improper conclusions. Suppose in the above example, the lawyer for the man about to be shot files a lawsuit in the local court attempting to enjoin the execution of his client. The argument of the defense that is asserted here would, in this hypothetical example, be

that an injunction could not be granted to stop the execution of the wrong man who lacked standing. Moreover, the defense contends that the only remedy in a case like this fictitious example is a lawsuit by the executed man's estate for wrongful death. However, such a plaintiff need not wait for "Damocles's sword ... to actually fall on" him "before the court will issue an injunction." *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 8–9 (D.C. Cir. 2016).

## THE PLAINTIFFS DO HAVE STANDING

President Biden's EO 14042 is applicable to government contractors and their employees, and it directed the SFWTF to issue a "Guidance" that would mandate that the contracts of the federal government with private contractors be amended to include provisions compelling several measures to address the current COVID-19 pandemic. The foundation for these measures was set forth in EO 14042:

> Section 1. *Policy.* This order promotes economy and efficiency in Federal procurement by ensuring that the parties that contract with the Federal Government provide adequate COVID–19 safeguards to their workers performing on or in connection with a Federal Government contract or contract-like instrument as described in section 5(a) of this order. These safeguards will decrease the spread of COVID–19, which will decrease worker absence, reduce labor costs, and improve the efficiency of contractors and subcontractors at sites where they are performing work for the Federal Government. Accordingly, ensuring that Federal contractors and subcontractors are adequately protected from COVID–19 will bolster economy and efficiency in Federal procurement.

> Sec. 2. *Providing for Adequate COVID–19 Safety Protocols for Federal Contractors and Subcontractors.* (a) Executive departments and agencies, including independent establishments subject to the Federal Property and

4

Administrative Services Act, 40 U.S.C. 102(4)(A) (agencies), shall, to the extent permitted by law, ensure that contracts and contract-like instruments (as described in section 5(a) of this order) include a clause that the contractor and any subcontractors (at any tier) shall incorporate into lower-tier subcontracts. This clause shall specify that the contractor or subcontractor shall, for the duration of the contract, comply with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force (Task Force Guidance or Guidance), provided that the Director of the Office of Management and Budget (Director) approves the Task Force Guidance and determines that the Guidance, if adhered to by contractors or subcontractors, will promote economy and efficiency in Federal contracting.

The current Task Force "Guidance" that implements EO 14042 is dated

November 10, 2021,[1] and relevant provisions thereof provides:

Pursuant to this Guidance, and in addition to any requirements or workplace safety protocols that are applicable because a contractor or subcontractor employee is present at a Federal workplace, Federal contractors and subcontractors with a covered contract will be required to conform to the following workplace safety protocols:
1. COVID-19 vaccination of covered contractor employees, except in limited circumstances where an employee is legally entitled to an accommodation;
2. Compliance by individuals, including covered contractor employees and visitors, with the Guidance related to masking and physical distancing while in covered contractor workplaces; and
3. Designation by covered contractors of a person or persons to coordinate COVID-19 workplace safety efforts at covered contractor workplaces.

Thus, this Guidance compels government contractors to perform the following

in reference to their employees: (1) require "COVID-19 vaccination of covered

contractor employees"; (2), in lieu of compelling a vaccination, establish procedures

---

[1] See:
https://www.saferfederalworkforce.gov/downloads/Guidance%20for%20Federal%20Contractors_Safer%20Federal%20Workforce%20Task%20Force_20211110.pdf

wherein those employees who are "legally entitled to an accommodation" may obtain such, and (3) establish procedures for "masking and physical distancing while in covered contractor workplaces." If employees of government contractors are being subjected to any of these three requirements, it is clear that the employer contractor is implementing this Guidance required by EO 14042.

Although having a different foundation and basis, civilian employees of the United States confront a similar mandate. EO 14043 likewise, although more directly, imposes a vaccine mandate. EO 14043, titled "Requiring Coronavirus Disease 2019 Vaccination for Federal Employees," provides:

> Section 1. *Policy.* It is the policy of my Administration to halt the spread of coronavirus disease 2019 (COVID–19)... The Centers for Disease Control and Prevention (CDC) within the Department of Health and Human Services has determined that the best way to slow the spread of COVID–19 and to prevent infection by the Delta variant or other variants is to be vaccinated. . . I have determined that to promote the health and safety of the Federal workforce and the efficiency of the civil service, it is necessary to require COVID–19 vaccination for all Federal employees, subject to such exceptions as required by law.
> Sec. 2. *Mandatory Coronavirus Disease 2019 Vaccination for Federal Employees.*
> Each agency shall implement, to the extent consistent with applicable law, a program to require COVID–19 vaccination for all of its Federal employees, with exceptions only as required by law.

Again, a SFWTF Guidance that relates to the mandates of EO 14043 for federal civilian employees has been promulgated. This Guidance (posted on several different places on the Internet) provides as follows:

Vaccination Requirements for Federal Employees.

Q: By what date do Federal employees need to be fully vaccinated?

A: Federal employees need to be fully vaccinated by November 22, 2021. Employees will be considered fully vaccinated for COVID-19 2 weeks after they have received the requisite number of doses of a COVID-19 vaccine approved or authorized for emergency use by the U.S. Food and Drug Administration or that has been listed for emergency use by the World Health Organization. For Pfizer-BioNTech, Moderna, or AstraZeneca/Oxford, that is 2 weeks after an employee has received the second dose in a 2-dose series. For Johnson and Johnson (J&J)/Janssen, that is 2 weeks after an employee has received a single-dose.[2]

Vaccinations

Federal Executive Branch employees must be fully vaccinated by November 22, 2021, except in limited circumstances where an employee is legally entitled to an accommodation, pursuant to E.O. 14043, Requiring Coronavirus Disease 2019 Vaccination for Federal Employees. Employees covered by Executive Order 14043 who fail to comply with a requirement to be fully vaccinated or provide proof of vaccination and have neither received an exception nor have an exception request under consideration, are in violation of a lawful order. Employees who violate lawful orders are subject to discipline, up to and including termination or removal.[3]

Thus, federal civilian employees were required "to be fully vaccinated by November 22, 2021" unless they are "legally entitled to an accommodation." One requirement of EO 14043 and the Guidance applied to those who decided to refuse a vaccination and chose to pursue "an accommodation." Two of the Plaintiffs here, Nelson and Leahy, work for NASA and are currently seeking an accommodation.

---

[2] See: https://www.saferfederalworkforce.gov/faq/vaccinations/

[3] See: https://www.hhs.gov/about/agencies/asa/hhs-covid-19-workplace-safety-plan/index.html

"To have standing under Article III, a plaintiff 'must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial decision." *Wollschlaeger v. Governor*, 848 F.3d 1293, 1303-04 (11th Cir. 2017).[4] The Plaintiffs in this case have clearly plead sufficient facts to show they have standing to maintain this suit: they have suffered or confront immediately an "injury," that is traceable to the actions of the President, and this court can certainly redress this wrong by a favorable decision.

Plaintiffs Joseph Makowski, Lyle Bloom, Ellen Millen, Jody Sobczak, Michael Nelson and Joseph Leahy are employed by either private companies that have government contracts or are actually federal civilian employees. This vaccine mandate at issue in this case was imposed by the President and his agent, the SFWTF. But neither the President or the SFWTF are actually implementing the requirements of these Executive Orders and Guidances on the Plaintiffs. Regarding Joseph Makowski, these requirements are being imposed by his employer, Phoenix Industries; for Lyle Bloom, they are being imposed by his employer, Cummings Aerospace; for Ellen Millen, they are being imposed by her employer, Raytheon Technologies; for Jody Sobczak, they are being imposed by his employer, The Boeing

---

[4] See also *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

Company; for Michael Nelson and Joseph Leahy, they are being imposed by NASA, their employer.  But, standing for these parties is not affected when the harm they suffer has been caused by third parties such as these employers.

"The Supreme Court's decisions on this point show that mere indirectness of causation is no barrier to standing, and thus, an injury worked on one party by another through a third party intermediary may suffice." *National Wildlife Federation v. Hodel*, 839 F.2d 694, 705 (D.C. Cir. 1988).[5] See also *Bristol-Myers Squibb Co. v. Shalala*, 91 F.3d 1493, 1499 (D.C. Cir. 1996)("injurious private conduct is fairly traceable to the administrative action contested in the suit if that action authorized the conduct or established its legality"); *Motor & Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 457-58 (D.C. Cir. 1998)(party had standing to challenge government action based on the independent conduct of third parties where evidence demonstrated that the challenged action "resulted in an almost unanimous decision" by those third parties to take action); *America's Community Bankers v. FDIC*, 200 F.3d 822, 827 (D.C. Cir. 2000)("an agency does not have to be the direct actor in the injurious conduct, but that indirect causation through authorization is sufficient to fulfill the causation requirement for Article III standing."); *Consumer Federation of America*

---

[5] See *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 45 n.25 (1976) (noting cases providing that privately inflicted injury is traceable to government action if the injurious conduct "would have been illegal without that action").

*v. F.C.C.*, 348 F.3d 1009, 1012 (D.C. Cir. 2003)("When an agency order permits a third-party to engage in conduct that allegedly injures a person, the person has satisfied the causation aspect of the standing analysis."); *Telephone and Data Systems, Inc. v. FCC*, 19 F.3d 42, 47 (D.C. Cir. 1994)("injurious private conduct is fairly traceable to the administrative action contested in the suit if that action authorized the conduct or established its legality."); and *Competitive Enter. Inst. v. Nat'l Highway Traffic Safety Admin.*, 901 F.2d 107, 113-18 (D.C. Cir. 1990) (finding "overwhelming evidence" in the administrative record to support a conclusion that third parties' decisions were not substantially independent of the challenged government action and that those third parties were likely to alter their behavior in response to favorable judicial action).

Here, causation is clear and directly arises from the implementation of EO 14042 and EO 14043 by the Plaintiffs' employers. For example, Plaintiff Millen works for Raytheon Technologies. Via a document dated December 9, 2021, titled "Frequently Asked Questions: COVID-19 Health and Safety Updates," Raytheon posed several common questions asked by its employees and provided answers thereto:

> 6. I live in a U.S. state that prohibits mandating COVID-19 vaccinations. Does this policy apply to me?
> Yes. In every U.S. state, irrespective of state law, the company must comply with its obligations under federal Executive Order 14042, which requires federal contractors to ensure that all employees working on or in connection

with covered federal contracts, including those working remotely or at a covered contractor workplace, are fully vaccinated by Jan. 18, 2021. These requirements have been promulgated pursuant to federal law and supersede any contrary state or local law ordinance.

See attached Ex. 1.

But, what about the problem of imminent harm? For declaratory relief, the Plaintiffs must "allege facts from which it appears there is a substantial likelihood that he will suffer injury in the future," and that injury must be "real," "immediate," and "definite." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "When a party brings a pre-enforcement challenge to a statute, regulation or ordinance, the federal court must ask whether 'the conflicting parties present a real, substantial controversy which is definite and concrete rather than hypothetical and abstract.' * * * In order to prove that a real and substantial controversy exists, * * *, a plaintiff must show 'a realistic danger of sustaining direct injury as a result of the statute's operation or enforcement.' * * * When a plaintiff has stated that he intends to engage in a specific course of conduct 'arguably affected with a constitutional interest,' however, he does not have to expose himself to enforcement to be able to challenge the law. * * * 'If the injury is certainly impending, that is enough.'" *Am. Civil Liberties Union v. The Fla. Bar*, 999 F.2d 1486, 1491 (11th Cir. 1993). See also *Robinson v. Attorney General*, 957 F.3d 1171, 1177 (11th Cir. 2020).  Moreover, even small injuries provide standing. See *Losch v. Nationstar Mortg. LLC*, 995 F.3d 937, 943 (11th Cir.

2021)("Losch has shown a concrete injury in the form of the emotional distress and time he spent contesting the inaccurate information.").

The defense takes issue with apparent omissions in the amended complaint ,and claims that the Plaintiffs have avoided taking any vaccine which falls short of showing standing. But, this is not a problem at all because it is clear that they have engaged in self-avoidance of imminent harm they fear can be caused by the vaccines. "Supreme Court jurisprudence is more rare regarding application of the Declaratory Judgment Act to situations in which the plaintiffs self-avoidance of imminent injury is coerced by threatened enforcement action of a private party rather than the government. Lower federal courts, however (and state courts interpreting declaratory-judgment acts requiring 'actual controversy'), have long accepted jurisdiction in such cases." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007).

The Plaintiffs in this case have certainly suffered injuries. For example, Plaintiff Joseph Makowski was vaccine injured as a child. When he became old enough to work, he got a job with Phoenix Industries, which is a company located in Huntsville that provides job for the handicapped. Phoenix has a contract to provide janitorial services for government buildings located on Redstone Arsenal. When EO 14042 became effective, Phoenix informed its employees, including Makowski, about the requirement to get vaccinated. Upon being so informed, Makowski became very alarmed and concerned because he believed that he could be further harmed by

another vaccine. Makowski and his father then consulted with Plaintiff Dr. Calderwood, who after interviewing Makowski, adamantly stated he should not get vaccinated.

Thereafter, Makowski consulted a company in Denver named Disabled Rights Advocates, PLLC, about his rights under the Americans With Disabilities Act. By letter dated November 17, 2021, Makowski was informed that he should seek an accommodation from his employer. Following this advice, on November 21, 2021, Makowski submitted to his employer a request for a medical accommodation, which was granted on November 29. However, his request for an exemption from masking requirements and testing was not approved. Currently, Makowski is concerned that he still may be subjected in the future to another vaccine mandate, and wearing masks at work is particularly bothersome. Further, the weekly testing consumes his time and also causes inconvenience, stress and fear.

Plaintiff Michael Nelson has worked for NASA for 39 years and really enjoys his job. In early October, he was informed by his superiors about the vaccine mandate that would be effective on November 22, 2021. After inquiries, he learned that he could submit a request for a religious accommodation, and he submitted one on October 15, 2021. Currently, that request is under review, although NASA has requested that he supply additional information to justify his request.

But because Nelson is not vaccinated and has requested a religious

accommodation, the environment in which he works has decidedly changed. He must wear masks at meetings, engage in social distancing, and is ostracized by his fellow workers because he is not vaccinated and is seeking a religious accommodation. But for the ramifications of EO 14043 and the applicable Guideline, Nelson would not have had to investigate how to secure a vaccine exemption, draft and present such to his superiors, and deal with everything that has followed, all of which has consumed a substantial amount of time. Further, he is concerned that even though he has requested an exemption, it may be denied and he may very well lose his job. In summary, the imposition of the vaccine mandate has required him to devote time to addressing this requirement, and in any event, he may eventually be terminated, all of which causes serious concerns. Clearly, the imposition of the requirements dictated by EO 14043 and the applicable Guideline have been felt by Nelson.

Parties objecting to the vaccine and related mandates solely on religious grounds have been found to have proper standing to institute suit. On January 3, 2022, Judge Reed O'Connor in the Northern District of Texas, Fort Worth Division, in a case styled U.S. Navy Seals v. Biden, Case No. 4:21-cv-01236-O, entered an injunction in that case. The plaintiffs there established their standing based on the fact that they had submitted requests for religious accommodations. If standing was upheld in that case, it should similarly be recognized here.

Both Makowski and Nelson have suffered injuries no different from those

found valid in *Losch v. Nationstar Mortg. LLC*, supra. If there is need for further clarification and pleading in the amended complaint in this respect, the particulars noted above may be added to ¶¶ 15 and 19 of the amended complaint. Further, the other Plaintiffs have had similar experiences, which can also be recounted in amendments to various paragraphs of the amended complaint related to them.

The defense also asserts that the imposition of a vaccine requirement, the wearing of masks or periodic testing to retain a job is inconsequential. But, the "unconstitutional conditions doctrine" prohibits the government from conditioning continued employment "on a basis that infringes [] constitutionally protected interests . . ." *Perry v. Sindermann,* 408 U.S. 593, 597 (1972). "[T]he very purpose of the unconstitutional conditions doctrine is to prevent the government from subtly pressuring citizens, whether purposely or inadvertently, into surrendering their rights." *Lebron v. Secretary, Florida Dept. of Children and Families*, 710 F.3d 1202, 1218 (11th Cir. 2013) (quoting *Bourgeois v. Peters*, 387 F.3d 1303, 1324-25 (11th Cir. 2004)).

Any employee who is forced to choose between retaining a job on the condition of submitting to an experimental vaccine or being terminated from their employment is being given an ultimatum, not a choice.  The threat of termination of employment is, by nature, coercive. See, e.g., *Am. Fed'n of State, County & Mun. Employees Council 79 v. Rick Scott*, 717 F.3d 851, 874 (11th Cir. 2013) ("In effect, the State is

offering its employees this Hobson's choice: either they relinquish their Fourth Amendment rights and produce a urine sample which carries the potential for termination, or they accept termination immediately. * * * To begin with, we do not agree that employees' submission to drug testing, on pain of termination, constitutes consent under governing Supreme Court case law").  Employees who must submit to taking a vaccine or be fired are hardly acting voluntarily, free of either express or implied duress and coercion. See *Bostic v. McClendon*, 650 F.Supp. 245, 249 (N.D.Ga.1986); cf. *Garrity v. New Jersey*, 385 U.S. 493, 497–98 (1967) (holding that the government cannot require its employees to relinquish their Fifth Amendment rights on pain of termination because "[t]he option to lose their means of livelihood or to pay the penalty of self-incrimination" was "the antithesis of free choice").

The defense argument that the Executive Orders will not force the Plaintiffs "to take a shot against their will" falls short as it fails to acknowledge the result of not taking the shot. The defense claims that the Plaintiffs have the "choice" to refuse the shot and face termination.  Being forced to choose between taking a COVID vaccine or termination of employment is no choice at all.

The contentions of the defense that the Plaintiffs lack standing to maintain this suit are without foundation.

## THE MERITS OF THE COUNTS IN THE AMENDED COMPLAINT

### A. The President as a Defendant.

Presidents have been made defendants in litigation, and some of the reported cases include *Nat'l Treasury Emps. Union v. Nixon*, 492 F.2d 587 (D.C. Cir. 1974); *TikTok Inc. v. Trump*, 507 F. Supp. 3d 92, 96 (D.D.C. 2020); *Gomez v. Trump*, 485 F. Supp. 3d 145, 165, 205 (D.D.C. 2020). And some courts have approved judgments against the President. *Clinton v. City of New York*, 524 U.S. 417, 425 n.9 (1998); *CREW v. Trump*, 302 F. Supp. 3d 127, 139 n.5 (D.D.C. 2018). No federal official, from the highest to the lowest, is above the law. *United States v. Nixon*, 418 U.S. 683, 715 (1974).

In *Nat'l Treasury Emps. Union*, supra, that court concluded that the President, in reference to a ministerial act, could be subjected to a suit for declaratory relief: "This case presents a most appropriate instance for the use of a declaratory decree. Accordingly, we confine ourselves at this time to a declaration of the law, that is, that the President has a constitutional duty forthwith to grant, effective as of October, 1972, the federal pay increase mandated by the Congress and sought by NTEU herein so that the members of NTEU can collect what has been due them for many months." Id., at 616. Plaintiffs here seek declaratory relief, but not for a ministerial act.

Since the onset of this COVID-19 pandemic, and especially since September 9 of last year, a number lawsuit have been filed making the President a defendant. It appears that the reason for doing so is because declaratory relief has been sought in those cases. In this case, the President is not an essential party and the United States

is a party here. For this reason, the Plaintiffs do not object to releasing the President as a defendant.

**B. The Merits of Count I.**

Whether there is an emergency some place in America is a matter seldom litigated, primarily because there have been few of them. Nonetheless, the Supreme Court has addressed the question of whether an emergency exists in at least 3 prior decisions: *Chastleton Corp. v. Sinclair*, 264 U.S. 543 (1924); *Sterling v. Constantin*, 287 U.S. 378 (1932); and *Home Building and Loan Association v. Blaisdell*, 290 U.S. 398 (1934). That Court considers the question of whether an emergency exists as a proper matter for judicial inquiry. This question is directly raised in this count.

The defense contends that this question of the existence of an emergency related to the COVID-19 pandemic was administratively addressed when the HHS Secretary or FDA was considering this issue in relation to the grant of EUAs for the vaccines in current use. For this reason, the defense argues that nobody contested this issue administratively, agency officials exercised their discretion, and then determined that an emergency existed.

Plaintiffs contend, however, that whether an emergency exists is not a matter committed to the discretion of any agency, and is a matter that a court can determine at any time when raised in litigation. This count is therefore valid and not due to be dismissed.

### C. The Merits of Count VI.

This count challenges EO 14042 and EO 14043 as being invalid and unlawful because the President lacks the statutory authority to issue them. While the defense broadly asserts that the President does have authority to issue them, that claim is questionable because within the last several months, a number of other district courts have concluded otherwise. See *Missouri v. Biden*, No. 4:21-cv- 01329-MTS, 2021 U.S. Dist. LEXIS 227410 (E.D. Mo. Nov. 29, 2021); *Louisiana v. Becerra*, No. 3:21-CV-03970, 2021 U.S. Dist. LEXIS 229949 (W.D. La. Nov. 30, 2021); *Louisiana v. Becerra*, No. 21-30734, 2021 U.S. App. LEXIS 37035 (5th Cir. Dec. 15, 2021); *Georgia v. Biden*, No. 1:21-cv-163, 2021 U.S. Dist. LEXIS 234032 (S.D. Ga. Dec. 7, 2021); and *Florida v. Nelson*, No. 8:21-cv-2524-SDM-TGW, 2021 U.S. Dist. LEXIS 246185 (M.D. Fla. Dec. 22, 2021). On January 1, 2022, Judge Terry Doughty entered another similar order in a case styled *Louisiana v. Becerra*, Case No. 3:21-cv-0437, U.S. District Court for the Western District of Louisiana.

District Judge Tatenhove posed this interesting question in response to a similar motion for a preliminary injunction seeking to enjoin implementation of EO 14042: "Can the president use congressionally delegated authority to manage the federal procurement of goods and services to impose vaccines on the employees of federal contractors and subcontractors?" He answered: "In all likelihood, the answer to that question is no." See *Commonwealth of Kentucky v. Biden*, No.

3:21-cv-00055-GFVT, 2021 U.S. Dist. LEXIS 228316 (E.D. Ky. Nov. 30, 2021).

In reference to the recent OSHA vaccine mandate,[6] the Fifth Circuit has held

such to be invalid in *BST Holdings, LLC v. Occupational Safety and Health Admin.*,

17 F.4th 604 (5th Cir. 2021):

> Second, concerns over separation of powers principles cast doubt over the Mandate's assertion of virtually unlimited power to control individual conduct under the guise of a workplace regulation. As Judge Duncan points out, the major questions doctrine confirms that the Mandate exceeds the bounds of OSHA's statutory authority. Congress must "speak clearly if it wishes to assign to an agency decisions of vast economic and political significance." *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014) (cleaned up). The Mandate derives its authority from an old statute employed in a novel manner, imposes nearly $3 billion in compliance costs, involves broad medical considerations that lie outside of OSHA's core competencies, and purports to definitively resolve one of today's most hotly debated political issues. *Cf. MCI Telecomms. Corp. v. AT&T*, 512 U.S. 218, 231 (1994) (declining to hold that the FCC could eliminate telecommunications rate-filing requirements); *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159–60 (2000) (declining to hold that the FDA could regulate cigarettes); *Gonzales v. Oregon*, 546 U.S. 243, 262 (2006) (declining to allow DOJ to ban physician-assisted suicide). There is no clear expression of congressional intent in § 655(c) to convey OSHA such broad authority, and this court will not infer one. Nor can the Article II executive breathe new power into OSHA's authority – no matter how thin patience wears.

There have been profound consequences as a result of the Fifth Circuit's

holding in *BST Holdings*. Last Fall, there were a number of petitions to challenge

those OSHA regulations filed in the U.S. Courts of Appeal around the country like

that involving BST Holdings, and they have been consolidated into one case pending

---

[6] See 86 Fed.Reg. 61402 (Nov. 5, 2021).

in the Sixth Circuit. A panel of that court recently vacated the stay imposed by the

Fifth Circuit, and now a large number of petitions have been filed with the Supreme

Court to challenge the Sixth Circuit's vacatur of the Fifth Circuit's stay. See Case

Nos. 21A240 through 21A260.[7] Today, the U.S. Supreme Court heard those petitions,

and Justices Roberts and Kavanaugh made statements during argument that at least

indicated that something such as stay might be issued shortly.

To demonstrate the merits of this count and to assist the court, Plaintiffs attach

a series of exhibits. EO 14042 claims that it is authorized via 3 U.S.C. §301 and 40

U.S.C. §101, *et seq*. These statutes DO NOT provide authority for this Executive

Order.

In 1926, Congress created the United States Code with its then 50 titles, and

that Code included a Title 3, which did not include this §301. On June 25, 1948,

Congress enacted Title 3 into positive law. See An Act To codify and enact into law

Title 3 of the United States Code, 62 Stat. 672, ch. 644. This title at that time had no

§301.

On October 31, 1951, §301 of this title was inserted therein via Pub. L. 248,

---

[7] As *amici curiae*, 183 members of Congress have submitted a brief in Case No.
No. 21A244 wherein they similarly argue that Congress never delegated authority to
OSHA to impose vaccine mandates. See:
https://www.supremecourt.gov/DocketPDF/21/21A244/207079/20211230171756
458_MOC%20Amicus%20FINAL.pdf

65 Stat. 710, ch. 655. This 20 page act had nothing to do with vaccines or authorizing the President to impose vaccines. Consequently, §301 does not provide the statutory foundation for this Executive Order.

EO 14042 also asserts that 40 U.S.C. §101, and possibly other provisions of the Federal Property and Administrative Services Act provide the statutory foundation for a vaccine mandate.[8] But, nothing in Title 40 remotely indicates that the President is authorized to impose vaccine mandates.

In 1926, Congress codified most of the federal laws and thus created Title 40 of the U.S. Code. The 1926 version of this title was only 22 pages long, and the President was mentioned only 23 times therein. The 1940 version of title 40, U.S. Code, was only 63 pages long and the President was mentioned therein only 59 times. In the 1952 version of 40 U.S.C.[9] (which was 127 pages long), the President was mentioned only 64 times. In title 40 of the 1964 U.S. Code (which was 151 pages long), the President was mentioned only 98 times. The 1996 version of this title was

_____

[8] 40 U.S. Code was enacted into positive law in August, 2002. See Pub. L. 107–217, 116 Stat. 1062. The legislative report for this codification, House Report 107–479, 107th Congress, 2d Session, made clear that the act made no substantive changes in the law. *Stewart v. Kahn,* 78 U.S. 493, 502 (1871)("A change of language in a revised statute will not change the law from what it was before unless it be apparent that such was the intention of the legislature.").

[9] The "Federal Property and Administrative Services Act of 1949" was enacted by Congress on June 30, 1949, 63 Stat. 377, ch. 288. It was codified into 40 U.S.C. and has been subject to a number of amendment ever since.

316 pages long, and the President was mentioned therein 192 times. The 2003 version of this title was 219 pages long, and the President was mentioned therein only 132 times. Finally, the latest version of this title published in the 2019 U.S. Code, is 263 pages and the President is mentioned therein 153 times.[10]

The prior versions of this title were only "evidence of the law," but on August 21, 2002, this title was enacted into positive law by Pub. L. 107–217, 116 Stat. 1062. House Report 107-479 related to the enactment of this title and it stated that the "purpose of the bill [was] to revise, codify, and enact without substantive change the general and permanent laws of the United States related to public buildings, property, and works, as as [sic] title 40, United States Code, 'Public Buildings, Property, and Works'".

However, these laws codified in 40 U.S.C. do not provide the President with authority to impose vaccine mandates, and thus he lacks the statutory as well as constitutional authority to impose these mandates he may believe will assist in a speedy resolution of the current COVID-19 crisis.

EO 14043 claims that it is authorized via 5 U.S.C. §§ 3301, 3302, and 7301. Contrary to the claims of the defense, these statutes DO NOT provide authority for this Executive Order as shown by the attached exhibits.

---

[10] On request, counsel for the Plaintiffs will provide to the defense or the court searchable PDF images of these various versions of 40 U.S.C.

The origin of § 3301 is found in § 9 of "An Act Making Appropriations for sundry civil Expenses of the Government for the fiscal Year ending June 30, eighteen hundred and seventy-two, and for other Purposes", 16 Stat. 495, 514, ch. 114 (see Ex. 2 hereto, pp. 1-4). This section was later incorporated into the Revised Statutes of 1873 as § 1753 (see Ex. 2, pp. 5-7), and thereafter was incorporated into 5 U.S.C. § 631 when the U.S. Code was created in 1926 (Ex. 2, pp. 8-11). See also 5 U.S.C. § 631 in the 1946 U.S. Code (Ex. 2, pp. 12-13). A part of this § 631 became § 3301 when this title of the U.S. Code was enacted into positive law in 1966. See Pub.L. 89-554, 80 Stat. 378, at 417 (Ex. 2, pp. 14-16).

Section 2 of "An act to regulate and improve the civil service of the United States", 22 Stat. 403, ch. 27, enacted by Congress on January 16, 1883, is the genesis of § 3302 (Ex. 3, pp. 2-3). When the current U.S. Code was created in 1926, parts of this section were incorporated into 5 U.S.C. § 633 (Ex. 3, pp. 4-6). See also 5 U.S.C. § 633 in the 1946 U.S. Code (Ex. 3, pp. 7-11). When this title of the U.S. Code was enacted into positive law in 1966, this section became § 3302. See Pub.L. 89-554, 80 Stat. 378, at 417 (Ex. 3, pp. 12-16).

The origin of § 7301 is the same as that for § 3301: § 9 of "An Act Making Appropriations for sundry civil Expenses of the Government for the fiscal Year ending June 30, eighteen hundred and seventy-two, and for other Purposes", 16 Stat. 495, 514, ch. 114 (Ex. 4, pp. 1-4). This § 9 was later incorporated into the Revised

Statutes of 1873 as § 1753 (Ex. 4, pp. 5-7) and was later incorporated into 5 U.S.C. § 631 when the U.S. Code was created in 1926 (Ex. 4, pp. 8-11). A single sentence of § 631 became § 7301 when this title of the U.S. Code was enacted into positive law in 1966. See Pub.L. 89-554, 80 Stat. 378, at 417  (Ex. 4, pp. 12-15).

These laws were enacted by Congress in 1872 and 1883, and there is absolutely no proof or indication that at that time Congress intended to authorize the President by means of these laws to impose vaccine mandates on any or all federal employees. See *Bostock v. Clayton County*, 140 S. Ct. 1731, 1737 (2020) ("This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment.").

Because no law authorizes the President to issue these two executive orders, the Plaintiffs are entitled to judgment in their favor on this count.

### D. The Merits of the Other Counts.

The authority of the HHS Secretary and other federal officials to grant EUA status to the 3 currently FDA approved COVID-19 vaccines is based on 21 U.S.C. § 360bbb-3. Actions taken by agency officials pursuant to this section are subject to the discretion of these officials. See *Heckler v. Chaney*, 470 U.S. 821 (1985). When federal officials and agencies have such discretion, their decisions are not subject to judicial review.

The defense in this case has presented the administrative record related to the

approval of these 3 vaccines, and it asserts that the remaining counts in the amended complaint constitute an invalid attempt to seek judicial review of decisions made by an agency that are within its sole discretion. However, this is an inaccurate description of the purpose and objective of these counts. Actions of an agency may be judicially reviewed for an abuse of discretion or for violations of the law. "In all cases agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U. S. 402, 413-414 (1971). "The Administrative Procedure Act requires federal courts to set aside federal agency action that is 'not in accordance with law,' 5 U. S. C. §706(2)(A) – which means, of course, any law, and not merely those laws that the agency itself is charged with administering." *FCC v. Nextwave Personal Communications, Inc.*, 537 U.S. 293, 300 (2003).

Two of the vaccine manufacturers, Pfizer and Johnson & Johnson, are well aware of the crime of misbranding, proscribed by 21 U.S.C. § 331, as they have been prosecuted and convicted of this crime (see ECF 37, pp. 20-23). The elements of this crime are set forth in 21 U.S.C. § 352(j), and encompass the matter of whether a vaccine or other drug "is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof." See *Kordel v. United States*, 335 U.S. 345 (1948).

The attached Ex. 5 is the declaration of Dr. Henry Ealy, which reveals that he has been analyzing the statistics related to COVID-19 deaths and injuries since the start of this pandemic. Based on his studies, which includes data derived from the VAERS data base (among others), it is possible and very realistic to assert that as many as 427,640 Americans have died as a result of taking the vaccines (see 7th page of Ealy declaration).

It is fair to presume that the vaccines being used today are better than when they were first tested by the manufacturers before they were approved by federal officials. If there has been this number of deaths since the vaccines have been administered to the American public, the vaccines that were tested before approval were likely worse, and probably the vaccine manufacturers would have been aware of this tendency for death and other injuries.[11] It is very likely the vaccine manufacturers knew of the serious danger to the health of vaccine recipients, and the logical conclusion is that the manufacturers have again committed misbranding.

If these likely events were happening, it is also logical to ask: how much did federal officials know about this serious problem? But, whether federal officials merely suspected some problem or were aware of more, the possibility of the occurrence of what is stated above leads to but one conclusion: the decisions of

---

[11] Vaccines are unavoidably unsafe. See *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 234 (2011).

federal officials in this respect are not clothed with discretion, as discretion has been abused.

Because of the possibility that serious wrongs have likely been committed, the defense here cannot assert that judicial review is foreclosed. The defense claim of discretion, under these circumstances, cannot prevent this case from moving forward.

## CONCLUSION

For the reasons shown above, the motion to dismiss of the defense should be denied.

Respectfully submitted this the 7th day of January, 2022.

/s/ Lowell H. Becraft, Jr.

Lowell H. Becraft, Jr.
Attorney for Plaintiffs
ASB 5005-F66L
403C Andrew Jackson Way
Huntsville, AL 35801
256-533-2535
becraft@hiwaay.net

/s/ Thomas Renz

Thomas Renz
Attorney for Plaintiffs
Ohio Bar No. 98645
1907 W. State St. #162
Fremont, OH 43420
419-351-4248
renzlawllc@gmail.com

/s/ Michael A. Hamilton

Michael A. Hamilton
Attorney for Plaintiffs
KY Bar No. 89471
HAMILTON & ASSOCIATES
1067 N. Main St, PMB 224
Nicholasville, KY 40356
859-655-5455
michael@cornerstoneattorney.com

/s/ F. R. Jenkins

F. R. Jenkins
Attorney for Plaintiffs
Maine Bar No. 004667
Meridian 361 International Law Group, PLLC
97A Exchange Street, Suite 202
Portland, ME 04101
866-338-7087

jenkins@meridian361.com

/s/ *N. Ana Garner*

N. Ana Garner
Attorney for Plaintiffs
Garner Law Firm
206 W. Main Street
Farmington, NM 87401
505-930-5170
garnerlaw@yahoo.com

/s/ *Joey Gilbert*

Joey Gilbert
Attorney for Plaintiffs
Joey Gilbert Law
405 Marsh Avenue
Reno, Nevada 89509
775-210-1501
joey@joeygilbertlaw.com

/s/ *Robert J. Gargasz*

Robert J. Gargasz
Attorney for Plaintiffs
Ohio Bar ID: 0007136
1670 Cooper Foster Park Rd.
Lorain, Ohio 44053
440-960-1670
rjgargasz@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on this date, January 7, 2022, I electronically transmitted this pleading to the Clerk of the Court using the CM/ECF system for filing, which will send notification of such filing to all counsel for the parties in this case.

/s/ *Lowell H. Becraft, Jr.*

Lowell H. Becraft, Jr.